FILED'10 DEC 15 12:38USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR10-06 RE |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| STEVEN RAY MILLER, | |
| Defendant. | |

Defendant Steven Ray Miller is charged with being a felon in possession of firearms. He moves to suppress evidence and statements arising out of a vehicle stop that occurred on November 8, 2009 (#14). Oral argument and testimony occurred on November 10, 2010. For the reasons set out below, the motion is granted.

## I. Findings of Fact

Portland Police Officers Randi Miller and Heath Kula were working a prostitution detail in Portland, Oregon, patrolling SE 82nd Avenue in an unmarked police car at about 3:30 p.m. This is a well known high vice area. The officers are experienced in prostitution cases.

The officers were southbound on 82nd Avenue at Burnside, when they noticed a female walking north on the east side of 82nd Avenue. The female was about 200 feet south of Burnside

Page 1

when Officer Kula saw her. Tr. 39. Kula testified that "What we're looking for is kind of a stroll, the opposite of somebody who's walking quickly or basically with purpose, just as opposed to somebody who appears to be walking down the street, without a destination or purpose." Tr. 9. Officer Miller noticed the woman because she was a single female in a high vice area. Tr. 64. The woman was "walking pretty slow. Not really looking like she was walking straight ahead somewhere. She was looking at traffic. That's what initially caught my eye." Tr. 64-65.

The officers slowed down to observe the female and saw a silver Toyota Tercel parked in a lot on the east side of the street, with a single male driver. The car was perpendicular to 82nd Avenue, approximately ten feet back from the sidewalk. The officers saw the woman and the defendant make eye contact. Tr. 13-14; 64-65.

The officers drove past the parked car and the woman, and turned their car around and parked in the center turn lane to observe. They were approximately 50 feet from the parked car. The officers watched the woman walk away from them, up to and past the front end of the car, where she abruptly turned right and entered the passenger door. The officers could not see the woman's face as she walked away from them towards the car.

The officers observed the woman for a maximum of 60 seconds. Tr. 12. She was dressed in blue jeans, a blouse, and a sweatshirt. That style of dress is not uncommon for Portland prostitutes. *Id.*

The vehicle turned right, north onto 82nd Avenue. The officers stopped defendant based on the suspicion of prostitution and a traffic violation[1]. On subsequent search of the vehicle

---

[1] In their written reports, composed on the day of the stop, the officers cited defendant's alleged failure to signal the turn out of the driveway or parking lot onto 82nd Avenue as a reason for the stop. However, Oregon law does not require the use of a turn signal when a

Page 2

officers found multiple weapons, explosives, and methamphetamine. No charges were brought against the woman and she was released.

## II. Legal Standards

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. A warrantless search is per se unreasonable unless it is subject to a specific preestablished exception. *Katz v. United States,* 389 U.S. 347, 357 (1967). The government bears the burden of showing that a warrantless search was valid because it fell within one of the exceptions to the warrant requirement. *Schneckloth v.Bustamonte,* 412 U.S. 218, 222 (1973).

A traffic stop is a seizure under the Fourth Amendment. *Brendlin v. California,* 551 U.S. 249, 255 (2007). The Ninth Circuit applies a "reasonable suspicion" standard. *Lopez-Soto,* 205 F.3d at 1105.

Reasonable suspicion to stop requires "specific and articuable facts" which suggest that an individual is engaging in or about to engage in unlawful activity. *U.S. v. Sokolow,* 490 U.S. 1, 7 (1989). In determining whether a stop was justified by a reasonable suspicion, the court considers whether, in light of the totality of the circumstances, the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417-18, (1981). For the purposes of this analysis, the totality of the circumstances includes "objective observations, information from police reports, if such are

---

driver exits private property. Oregon Revised Statute 811.505. Consequently, any failure to use a turn signal cannot justify this stop. *United States v. Lopez-Soto,* 205 F.3d 1101, 1105 (9th Cir. 2000). Moreover, Officer Kula testified that as the officers approached defendant's car from the south they were unable to see the right turn indicator. Tr. 51.

Page 3

available, and consideration of the modes or patterns of operation of certain kinds of law-breakers." *Id.* at 418. When there is conduct that may be explained as both innocent or suspicious of criminal activity, the "determination that reasonable suspicion exists...need not rule out the possibility of innocent conduct." *U.S. v. Arvizu,* 534 U.S. 266, 277 (2002).

### III. Discussion

Portland city ordinance 14A.40.050 (Unlawful Prostitution Procurement Activities) provides:

> A. As used in this Section, "prostitution" means that unlawful conduct defined in Section 14A.40.040 of this Code. As used in this Section, "prostitution procurement activity" means any conduct by any person that constitutes a substantial step in furtherance of an act of prostitution. Such activity includes, but is not limited to, lingering in or near any street or public place, repeatedly circling an area in a motor vehicle, or repeatedly beckoning to, contacting, or attempting to stop pedestrians or motor vehicle operators.

The officers did not have a reasonable suspicion to stop the defendant. They articulated several factors supporting suspicion that the parties were attempting to commit prostitution: experienced officers, the high vice location, a single woman walking slowly, making eye contact with a single male driver in a car parked close to 82nd Avenue, and entering the car without conversing with the driver. Tr. 20-21. However, the officers acknowledged that they could not see the woman's face as she walked away from them, so they could not know whether she conversed with the driver. Tr. 44, 83.

Both officers testified that in a typical prostitution encounter the parties do not communicate before the prostitute gets into the car, and that this is suspicious behavior. Tr. 14-15, 66. However, Officer Miller also testified that "if they take too much time, or stand outside

the car, [they know] that they're going to be noticed." Tr. 66. Apparently either action is suspicious, therefore reducing the weight accorded to it.

In his written report Officer Kula stated that he "saw the listed small silver car pull up to 82nd Ave." Defendant's Ex. 1, p. 1. He testified, however, that he had a distinct recollection that the car was stopped when he first saw it. Tr. 35. Officer Kula testified that his written report was not in chronological order. It describes the woman getting into defendant's car before the officers turned their vehicle around.

Officer Kula did not include in his written report that he saw the parties make eye contact and that the woman was "strolling," though he considers these to be important factors he relies upon to determine whether someone is attempting to engage in prostitution. Tr. 46.

Officer Miller did not include in her written report that the single female was looking at traffic, though she believes that is a signal that a woman might be a prostitute, and she has included it in other written reports. Tr. 80-81. She did not include in her written report that she stopped her vehicle to observe the event. Tr. 82.

The government cites *United States v. Soundara,* 2006 WL 2095875 (D. Nev. July 27, 2006), *aff'd,* 257 F. Appx. 19, 2007 WL 3339195 (9th Cir. 2007). In this unpublished decision, the Ninth Circuit found a stop reasonable when experienced officers, in a "hot zone" within a larger high crime area, saw a vehicle extending part of the way out of a parking spot. The car's engine was running, the brake lights and headlights were on, it was 8:15 p.m., and the male defendant was leaning into the front passenger compartment apparently speaking with the female driver. The man's head, neck, upper torso, and hands were inside the vehicle.

The government also cites *United States v. Luqman,* 522 F.3d 619 (6th Cir. 2008), *cert.*

Page 5

*denied,* 129 S.Ct. 588 (2008). The *Luqman* court found a stop reasonable when experienced officers in a high crime area observed two women standing on a street corner at 11:40 p.m. One of the women approached a truck idling in the traffic lane. When the officers approached, the woman ran back from the truck to the street corner and the truck began to pull away. There is no evidence in this case of either party attempting to flee, nor was the defendant's car parked illegally.

Finally, the government cites *United States v. Cross,* 2009 WL 144402 (D. Alaska, May 1, 2009). In *Cross* an experienced officer saw a known prostitute walking up and down the street at 10:45 p.m. He observed a vehicle stop about ten feet from a stop sign on the side of the road, and the female raised her hand, nodded at the vehicle, and got in. Officer Kula testified that he did not know either party or the vehicle before the stop. Tr. 29, 30. There is no evidence that the woman walked back and forth, beckoned to or nodded at the defendant's car.

In all of the cases cited by the government there was at least one more articuable observation supporting a reasonable suspicion. This is not to say that an officer must be able to articulate a specific number of factors that cause suspicion, only that in this incident, considering the totality of the circumstances, the officers' observations do not rise to the level of a particularized and objective basis to believe that a crime was being committed.

This is an unfortunate situation in which experienced vice officers had an ultimately correct hunch. However, the Constitutional right of the individual to be free from unreasonable search and seizure prevails. In sum, a single female, dressed in jeans and sweater, strolling in a high vice area at 3:30 p.m. who makes eye contact with a driver, looks at traffic, and enters a parked car, all in less than sixty seconds, does not raise a reasonable suspicion that she is

engaged in prostitution activity. The evidence arising out of the illegal stop must be suppressed. *United States v. Colin,* 314 F.3d 439, 443-46 (9th Cir. 2003).

## IV. Conclusion

The Motion to Suppress (# 14) is granted.

Dated this 15 day of December 2010.

JAMES A. REDDEN
United States District Judge